[Cite as *In re E.R.*, 2019-Ohio-4491.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE: E.R.

:           APPEAL NO. C-180615
            TRIAL NO. F-12-2085-X

:           *O P I N I O N.*

Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  November 1, 2019

*Stagnaro Hannigan Koop, Co., LPA,* and *Michaela M. Stagnaro*, for Petitioner-Appellant,

*Keller, Barrett & Higgins, LLC,* and *Tina J. Barrett*, for Respondent-Appellee.

**CROUSE, Judge.**

{¶1}    Father appeals the decision of the Hamilton County Juvenile Court, denying his motion to reallocate parental rights and responsibilities and maintaining mother as the legal custodian of E.R.  For the reasons set forth below, we reverse the judgment of the juvenile court.

## I.  Facts and Procedure

{¶2}    Father and mother are the unmarried parents of E.R.  After their relationship ended in late 2012, father filed a petition for custody.  On November 14, 2013, the Hamilton County Juvenile Court designated mother the legal custodian of E.R. and granted father visitation.

{¶3}    Prior to the juvenile court's 2013 decision, the parties began to experience a breakdown in communication.  The relationship between the parties continued to deteriorate over the years.  On September 22, 2015, father filed a "Motion to Modify Parenting Time Order" requesting additional parenting time, phone contact with E.R., and access to E.R.'s daycare, medical, and school information.  The parties eventually submitted an agreed entry modifying the original parenting time order on June 15, 2016.  On February 21, 2017, father filed a "Motion to Enforce Parenting Time Order" to exercise extended time during the week of his wedding.  The parties again settled the issue by an agreed entry filed April 3, 2017.

{¶4}    On July 7, 2017, father filed a motion to reallocate parental rights and responsibilities.  Following a two-day trial, the magistrate awarded father legal custody of E.R.  Mother timely objected to the magistrate's decision.  The juvenile court granted mother's objections, finding no change in circumstances to justify a change of custody.  In his sole assignment of error, father argues that the juvenile

court erred in setting aside the magistrate's decision which awarded legal custody to father.

## II. Law and Analysis

{¶5} "In determining whether a 'change' has occurred, we are mindful that custody issues are some of the most difficult and agonizing decisions a trial judge must make." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). Therefore, appellate courts generally review a trial judge's decision with the utmost deference. *Wolford v. Willis*, 4th Dist. Gallia No. 17CA9, 2018-Ohio-3937, ¶ 12. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court." *Davis* at 419. However, a reviewing court may reverse a decision if the court made an error of law. *Id.*

{¶6} In order to modify a prior decree allocating parental rights and responsibilities, the trial court must first find that a change has occurred in the circumstances of the child or the child's residential parent. R.C. 3109.04(E)(1)(a). The change "must be a change of substance, not a slight or inconsequential change." *Davis* at 418. Thus, the changed conditions "must be substantiated, continuing, and have a materially adverse effect upon the child." *Id.* at 417, citing *Wyss v. Wyss*, 3 Ohio App.3d 412, 416, 445 N.E.2d 1153 (10th Dist.1982). However, "a change of substance is not the same as a substantial change." *Preece v. Stern*, 12th Dist. Madison No. CA2009-09-019, 2010-Ohio-857, ¶ 12. By the plain language of the statute, R.C. 3109.04 does not require a "substantial" change in circumstances. *Davis* at 417 ("R.C. 3109.04 requires only a finding of a 'change in circumstances[.]' * * * Nowhere in this statute does the word 'substantial' appear.").

3

{¶7}    Ohio courts have frequently held that a custodial parent's interference with a noncustodial parent's visitation, and the parents' inability to communicate and cooperate may constitute a change in circumstances which would allow for a modification of custody.  *See Headley v. Headley*, 11th Dist. Ashtabula No. 99-A-0049, 2000 WL 1458961 (Sept. 29, 2000); *Sypherd v. Sypherd*, 9th Dist. Summit No. 25815, 2012-Ohio-2615, ¶ 20; *In re Jones*, 12th Dist. Butler No. CA2002-10-256, 2003-Ohio-4748, ¶ 9.

{¶8}    For example, in *Reese v. Siwierka*, 11th Dist. Portage No. 2012-P-0053, 2013-Ohio-2830, the Eleventh District Court of Appeals upheld a finding of a change in circumstances based on the custodial parent's conduct regarding the noncustodial parent's parenting time.  There, the custodial parent interfered with the noncustodial parent's parenting time on nine separate occasions, monitored all of the child's telephone calls with the noncustodial parent, and failed to provide the noncustodial parent access to the child's medical records without court intervention.  *Id.* at ¶ 32.  The court also noted that the child was hesitant and resistant in interacting with the noncustodial parent's family during gatherings.  *Id.*  Under these circumstances, the Eleventh District found competent, credible evidence to support a change in circumstances under R.C. 3109.04(E)(1)(a).

{¶9}    In *Chelman v. Chelman*, 2d Dist. Greene No. 2007 CA 79, 2008-Ohio-4634, the Second District Court of Appeals upheld a finding of a change in circumstances based on the custodial parent's "repeated attempts to poison the children's relationship" with the noncustodial parent.  There, the custodial parent listed the noncustodial parent as "sperm donor" on their daughter's school enrollment form, failed to provide school information to the noncustodial parent, neglected to tell the noncustodial parent about doctors appointments, created unpleasant scenes at the

4

children's activities, and prohibited the children from talking to the noncustodial parent during the activities. The court determined that such increased hostility supports a finding of a change in circumstances.

> When a court makes a custodial decision, it makes a presumption that the circumstances are such that the residential parent will promote both maternal and paternal affection[.] * * * Where the evidence shows that after the initial decree the residential parent is not living up to the court's presumption and is attempting to poison the relationship between the ex-spouse and the children, this is a change of circumstances that warrants a modification of the prior custody decree.

*Id.* at ¶ 24, quoting *Beekman v. Beekman*, 96 Ohio App.3d 783, 789, 645 N.E.2d 1442 (4th Dist.1994).

{¶10} Other factors to be considered in determining a change in circumstances include the age of the child and the custodial parent's relocation. *See, e.g., Davis*, 77 Ohio St.3d at 420, 674 N.E.2d 1159 ("[A]ge alone is not a sufficient factor. However, even a small change in age * * * when combined with hostility between the parents that adversely affects the visitation or custody arrangement, may constitute a sufficient change in circumstances to warrant a change in custody."); *Green v. Green*, 11th Dist. Lake No. 96-L-145, 1998 WL 258434 (Mar. 31, 1998) ("Although a relocation, by itself, is not sufficient to be considered a change of circumstances, it is certainly a factor in such a determination. In addition, the attendant circumstances, as well as the impact of such a move, can be considered by the court by determining if a change of circumstances has occurred."). Furthermore, there is no need to analyze each alleged circumstance separately. "A change of circumstances can be upheld based on a collection of findings

5

as to how the lives of the residential parent and the child have changed since the prior decree." *Gibson v. Gibson*, 7th Dist. Columbiana No. 17 CO 0034, 2018-Ohio-2772, ¶ 42.

{¶11} Here, the magistrate found a change in circumstances based on father's need to resort to court intervention, E.R.'s move from infancy to school age, and mother's increasing hostility toward father. Following mother's objections, the juvenile court declined to adopt the magistrate's decision, finding:

> [T]here has been no *substantial* change in circumstances. The relationship between Mother and Father has always been strained and the parties have never been able to come to agreements without the intervention of the Court. The parties have faced ongoing tensions, new disagreements, and difficulties in communication, but the facts presented do not rise to a level of a *substantial* change in circumstances for the child or the custodian.

(Emphasis added.)

{¶12} It is clear that the juvenile court required a "substantial" change in circumstances, and thus, a higher burden of proof than required by statute. The decision states "that there has been no substantial change in circumstances." The decision further mentions the fact that the parties have faced ongoing tensions and new disagreements. The juvenile court also commented that the tension "seems to affect [E.R.]" and strongly encouraged the parties to practice flexibility and communication. The court warned that "the tumultuous exchanges and contentious social interactions will not be tolerated," and if the circumstances do not improve, then the court will entertain modifications to custodial arrangements. Reviewing the juvenile court's decision, which contains some serious concerns about the parties' behavior, we cannot

6

say that the court's finding that there has been no "substantial" change in circumstances was simply a misstatement rather than the imposition of a higher burden of proof than is required by R.C. 3109.04.

### *III. Conclusion*

{¶13}   We hold that the juvenile court erred in applying a higher standard than required by statute to determine whether a change in circumstances has occurred. Father's assignment of error is sustained solely for this reason.  The judgement of the juvenile court is reversed and this cause is remanded for application of the proper standard.

Judgment reversed and cause remanded.

**ZAYAS, P.J.,** and **MYERS, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

7