[Cite as *Akroyd v. Akroyd*, 2024-Ohio-4631.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

JAMES STEWARD AKROYD,

      CASE NO. 5-24-09

    PLAINTIFF-APPELLEE,

  v.

GENNIFER LYNN AKROYD
(NKA HESSELING),             O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Domestic Relations Division
Trial Court No. 2016 DR 00182

**Judgment Affirmed**

**Date of Decision: September 23, 2024**

APPEARANCES:

    *Kevin J. Stotts* **for Appellant**

    *James E. Haughn II* **for Appellee**

**WALDICK, J.**

{¶1} Mother-appellant, Gennifer Akroyd nka Hesseling ("Mother"), brings this appeal from the January 23, 2024 judgment of the Hancock County Common Pleas Court, Domestic Relations Division, modifying the parenting time between Mother and father-appellee, James Akroyd ("Father"). On appeal, Mother argues that the trial court erred by modifying the parental rights and responsibilities of the parties without providing proper notice. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} The parties were married on December 24, 2005. They had two children together: C.G.A., born in May of 2009, and C.S.A., born in February of 2012.

{¶3} In June of 2016, the parties filed for divorce. On August 11, 2017, the parties reached an agreement on the issues of parental rights and responsibilities, with the exception of child support, spousal support, and the division of debts and assets. Pursuant to the agreement, Mother was designated residential parent, and Father was designated non-residential parent. Father was awarded parenting time on alternate weekends from 5:00 p.m. Friday to 5:00 p.m. on Sunday. He was also awarded mid-week visitation on Monday and Wednesday from 4-8 p.m. The parties' agreement was entered as part of the trial court's final judgment, which was rendered April 30, 2018.

{¶4} Beginning in the year following the divorce decree, the parties engaged in nearly constant litigation related to parenting time. Between October of 2019 and January of 2023, Father filed five show-cause motions, alleging that Mother was in contempt for denying him a significant amount of parenting time. By April of 2021, Father alleged that he had calculated 540 days of lost parenting time. Father alleged, and Mother did not deny, that Father had not engaged in meaningful parenting time with the children after October 21, 2019. Notably, Allen County Children's Services became involved with the children in October 2019 following an allegation that one child had been abused; however, that case was closed in the spring of 2020 with no adjudication being made.

{¶5} As a result of the parties' litigation and the surrounding circumstances, the magistrate and the trial court amended parenting time between the parties and the children in *seven* orders from 2019 to 2021.[1] Father's contempt motions were held in abeyance while the parties and the children attended counseling to support reconciliation; however, counseling did not resolve the issues and Father was still not receiving parenting time in early 2023.

{¶6} Because he was still not receiving parenting time, Father pressed his earlier-filed show-cause motions. Mother filed a Motion for Sanctions, arguing that Father's filings were frivolous.

---

[1] In one odd modification that was agreed to by the parties, Father exercised parenting time twice per week but he was required to remain outdoors with the children and Mother was permitted to watch from a distance.

{¶7} A hearing was held before a magistrate on March 27, 2023, and May 31, 2023. At the hearing, Father presented the testimony of a therapist specializing in reunification of families. He opined that the prior therapist had the wrong approach to reunification.

{¶8} Mother testified at the final hearing that she was compliant with court orders until further orders were issued, and she was concerned with the allegation of abuse against Father by one of the children. Mother testified that she would let the children decide if they wanted to visit their father.

{¶9} Father testified that his last meaningful, non-therapy visit with his children was October 22, 2019. After hearing all of the testimony, the magistrate indicated it would consider all of the pending motions and issue a ruling. The magistrate noted it needed to do what was in the best interest of the children.

{¶10} On July 31, 2023, the magistrate issued a decision summarizing the history of the case and the pending motions. Ultimately the magistrate determined that Mother had established sufficient defenses to the accusations of contempt, and that Father's filings were not frivolous. Thus the magistrate recommended that all of those motions be denied.

{¶11} However, the magistrate continued by indicating that it faced "an equitable dilemma: neither parenting time nor family counseling is occurring. The investigation of the ACCSB has been closed without any significant findings,

charges being brought or resolution for this family." (Doc. No 572). The magistrate then stated:

> Neither a finding of contempt (with its remedies of fines and incarceration) nor the lack of a finding of contempt repairs the rift between the children and Plaintiff in this case. The circumstances have changed such that a simple return, on paper, to the parenting time orders contained in the *Decree of Divorce* is unlikely to resolve the issues. Only an equitable order by this Court to restore parenting time will prevent the present rift between parent and child from becoming a self-fulfilling prophecy that continues until these children emancipate from this Court's jurisdiction.

(*Id.*)

**{¶12}** The magistrate then determined that it was necessary, just, equitable, and in the best interests of the children that parenting time be modified. Thus the magistrate determined that a change in circumstances had occurred and it was in the best interests of the children to modify the then-existing visitation order, which was largely premised on recommendations of the family therapist, and nobody in the family was seeing the family therapist. Father was awarded parenting time on alternating weekends from Saturday at 12 p.m. until Sunday at 12 p.m. He was also awarded visitation mid-week on Wednesdays. The parenting time was to begin the first Saturday following issuance of a final judgment entry by the trial court.

**{¶13}** Mother filed multiple objections to the magistrate's decision. She argued, *inter alia*, that the magistrate modified a parenting order without a pending motion in violation of her right to due process. After transcripts were filed, the trial court filed an entry addressing Mother's objection as follows:

Defendant first objects by claiming that the Magistrate's Decision essentially modifies the parties existing parental rights and responsibilities without a pending motion or application to do so. The Magistrate acknowledged the long history of parenting orders in this case. (Magistrate's Decision, pp. 2-5). Defendant outlines many of these orders as well.

Defendant argues that, without a pending motion that seeks modification of the current parenting order, the Magistrate is without power to modify it. In one citation, Defendant refers to a case in which the court *sua sponte* granted summary judgment in order to support her claim. . . . The logic utilized by that Court is inapplicable here in multiple respects. Not only did that case concern a summary judgment, but it was decided only on trial briefs without any apparent consent by the parties to do so, and upon the court's decision to *sua sponte* treat the briefs as a dispositive motion.

That is not the case here. In this case, the parties have filed multiple motions, many of which directly or indirectly concern issues of parenting time and the best interests of the children. The defendant directs this Court to no other authority purporting to limit or prevent the use of equitable powers, pursuant to R.C. § 3105.011, in this fashion.

Defendant's arguments are without merit because of the Magistrate's inherent equitable powers and the unique circumstances of this case. The Magistrate recognized the prior parenting orders on multiple occasions, and further elucidated the failures on both sides to follow those orders. The Magistrate also fully considered the reasons for those failures, many of which were both within and outside the control of either party.

The Magistrate specifically recognized that her parenting time orders in this Decision arise in equity and that she faced an "equitable dilemma: neither parenting time nor family counseling is occurring." (Magistrate's Decision, p. 8). The Magistrate outlined the efforts and failures of both parties, the counselor, and even the children in deciding that revisions were necessary. She also carefully considered the Revised Code's general favor towards children's contact with their parents, and recognized that the current parenting schedule does not facilitate these important goals.

Despite a lack of a specific request for modification, the Magistrate is fully within her power to make modifications to the parenting orders. R.C. § 3105.011 states that courts of common pleas handling domestic relations matters have "full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters. This section is not a determination by the general assembly that such equitable powers and jurisdiction do not exist with respect to any such matter." R.C. § 3105.011(A). "Domestic relations matters" is then defined to include the "allocation of parental rights and responsibilities, *including the enforcement and modification of such orders*." R.C. § 3105.011(B)(1) (emphasis added [by trial court]). The Court "has the superseding obligation . . . to properly dispose of issues regarding the children of the divorcing parents" specifically including the application of R.C. § 3105.011. *In re Staats*, 2007-Ohio-111 [(3d Dist.).] . . . The Magistrate specifically indicated that she was acting in equity and utilized those powers appropriately.

This Court independently agrees with her analysis and finds them appropriate. She further found that the circumstances have changed and that the revised parenting time is in the best interests of the children as a result of the need to correct the "present rift between parent and child[.]" (Id. p. 9).

(Doc. No 585).

{¶14} Following its denial of Mother's objections to the magistrate's decision, the trial court issued a final judgment entry "modifying parenting time" on January 23, 2024. It is from this judgment that Mother appeals, asserting the following assignment of error for our review.

### Assignment of Error

**The Common Pleas Court of Hancock County, Ohio erred as a matter of law and to the prejudice of Appellant by modifying the parental rights and responsibilities of the parties' minor children without providing Appellant proper notice as guaranteed by [the] Due Process Clause of Law of the Fourteenth Amendment to the**

**United States Constitution and Section 16, Article I of the Ohio Constitution.**

{¶15} In her assignment of error, Mother argues that the trial court erred by modifying the parties' parental rights and responsibilities without providing her with proper notice in violation of her right to due process.

Analysis

{¶16} Revised Code 3105.011 governs equitable powers in domestic relations matters. It reads as follows:

(A) The court of common pleas including divisions of courts of domestic relations, has full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters. This section is not a determination by the general assembly that such equitable powers and jurisdiction do not exist with respect to any such matter.

(B) For purposes of this section, "domestic relations matters" means both of the following:

(1) Any matter committed to the jurisdiction of the division of domestic relations of common pleas courts under section 2301.03 of the Revised Code, as well as a complaint for child support and allocation of parental rights and responsibilities, including the enforcement and modification of such orders;

(2) Actions and proceedings under Chapters 3105., 3109., 3111., 3113., 3115., 3119., 3121., 3123., 3125., and 3127. of the Revised Code, actions pursuant to section 2151.231 of the Revised Code, all actions removed from the jurisdiction of the juvenile court pursuant to section 2151.233 of the Revised Code, and all matters transferred by the juvenile court pursuant to section 2151.235 of the Revised Code.

{¶17} In addition to R.C. 3105.011, Civil Rule 75(J) indicates that "The continuing jurisdiction of the court shall be invoked by motion filed in the original action." Courts have held that, "A postdecree show-cause motion filed by a party invokes both the inherent power of a domestic relations court to enforce its own orders and the court's continuing jurisdiction[.]" *State ex rel. Resnick v. Russo*, 2000 WL 10204, * 2-3 (8th Dist.).

{¶18} Here, Father filed numerous show-cause motions to enforce the court's parenting time orders, and Mother filed a motion for sanctions, both invoking the continuing jurisdiction of the domestic relations court under R.C. 3105.011 and Civil Rule 75(J). The trial court held hearings on all pending motions over two days, and heard testimony from the parties in addition to others. After hearing all the testimony and considering the evidence presented, the magistrate and the trial court determined that although the contempt motions and motion for sanctions should not be granted, the most recent parenting time order was not effective because Father was still not receiving his parenting time.[2]

{¶19} The magistrate and the trial court then invoked equitable authority under R.C. 3105.011 in an attempt to fix the *very* broken visitation issues between the parents. In altering the parenting schedule, the magistrate indicated that there had been a significant change in circumstances, and that it was in the children's best

---

[2] The most recent order had the parties following the recommendation of a therapist; however, there were no scheduled appointments with the therapist and thus no movement toward Father receiving parenting time. In fact, the therapist was on extended leave as of December of 2022.

interests that the most recent parenting-time order be altered. The trial court agreed with those findings. Notably, Mother has not appealed the trial court's findings with regard to a change in circumstances or with regard to the best interest findings. Thus those issues are outside our scope of review.

**{¶20}** Generally, "a trial court has broad discretion regarding the modification of parenting time." *Souders v. Souders*, 2022-Ohio-1953, ¶ 13 (1st Dist.). However, Mother argues that the trial court did not have any discretion to modify parenting time here because there was no "motion for modification of parenting time" filed. Mother's argument ignores the fact that numerous motions were filed invoking the continuing jurisdiction of the domestic relations court in order to enforce parenting time orders previously issued.

**{¶21}** Here, the trial court had *years* of filings and multiple hearings wherein both parents testified, then made a determination that it was equitable to modify parenting time because Father was receiving *none*.[3] Moreover, although Mother argues that she was not provided proper notice, she had full notice of the hearings that occurred and she was entirely aware that the subject of the hearings was her denial of Father's parenting time. Thus Mother was apprised of the types of issues that were being considered.

**{¶22}** Moreover, Mother cites no authority in her brief indicating that the trial court may not utilize its equitable powers under R.C. 3105.011 to alter

---

[3] The amount of parenting time Father ultimately received was still less than the original divorce decree.

visitation as it was done in this case. Her primary support comes from an older case from this Court, *Potts v. Courter*, 1992 WL 323811 (3d Dist.), wherein a grandparent intervener filed a motion for contempt against Mother when Mother did not permit the grandparent to have Christmas visitation with the child. The trial court found Mother in contempt, and modified the visitation order to increase *grandmother's* visitation rights. This Court reversed both the contempt finding and the modification, determining that a trial court errs by modifying visitation and support payments *as a sanction for contempt*. Here, the modification was not a sanction for contempt; rather, the modification was based on a change in circumstances and the best interests of the children. Thus *Potts* is distinguishable.

**{¶23}** The other cases cited by Mother, *Forrester v. Forrester*, 2005-Ohio-5230 (2d Dist.), and *In re A.G.*, 2014-Ohio-2597, are also readily distinguishable and do not compel a different outcome here. For example, *Forrester* concerned only a mother being found in contempt for interfering with visitation of a child's father. *A.G.* dealt with issues related to whether a child's due process rights were violated by her exclusion from a hearing and has no direct bearing on this case.

**{¶24}** In sum, the parties' filings invoked the continuing jurisdiction of the trial court pursuant to Civ.R. 75 and R.C. 3105.011. Mother was fully aware of the nature of the pending motions and purpose of the hearing. The trial court heard evidence and considered all of the information before it and modified parenting time to an amount that was still less than the original final decree, making the requisite

findings to do so. The trial court specifically indicated that it was invoking its equitable powers, and given the circumstances of this case, where Father had no meaningful visitation with his children since 2019, we can find no error with the trial court's decision. Nor do we find a violation of Mother's due process rights. Therefore, Mother's sole assignment of error is overruled.

*Conclusion*

{¶25} Having found no error prejudicial to Mother in the particulars assigned and argued, her assignment of error is overruled and the judgment of the Hancock County Common Pleas Court, Domestic Relations Division, is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and MILLER, J.J., concur.**

**/jlm**